IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

TANESHA MYERS,                    *
                                  *
        Plaintiff,                *        CIVIL ACTION NO. 13-00099-B
                                  *
vs.                               *
                                  *
CAROLYN W. COLVIN,                *
Commissioner of Social Security,*
                                  *
        Defendant.                *

## ORDER

Plaintiff Tanesha Myers (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq*. On April 10, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED and REMANDED.**

## I.    Procedural History

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on November 9, 2009. (Tr. at 156). Plaintiff alleged that she had been disabled since August 31, 2009, due to sleep disorder, problems with knees, asthma, and poor vision. (Id. at 160). Plaintiff did not allege a mental impairment of any kind. (Id.). Plaintiff's applications were denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Vincent P. Intoccia (hereinafter "ALJ") on May 10, 2011. (Id. at 28). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 30). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 45). On June 13, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 23). The Appeals Council denied plaintiff's request for review on January 8, 2013. (Id. at 1). The parties waived oral argument (Doc. 22), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

**Whether the ALJ erred in finding that Plaintiff did not meet Listing 12.05C?**

III. **Factual Background**

Plaintiff was born on December 1, 1988, and was twenty-two years of age at the time of her administrative hearing on May 10, 2011. (Tr. 31, 155). Plaintiff testified that she was in regular classes and completed the twelfth grade in high school, but she was not able to pass the reading portion of the Alabama High School Graduation Examination. Thus, she did not receive her diploma, and she has not obtained a GED. (Id. at 31-32). Plaintiff further testified that she received her driver's license in 2009, that she had to take the oral examination three times before passing it, and that someone generally drives her around.[1] (Id. at 37-38, 43, 47).

In her Function Report provided to the Agency, as well as her hearing testimony, Plaintiff stated that she worked for little over a year operating a sewing machine for a cap company, and she also worked as a cashier in the fast food industry. (Id. at 32-33, 47, 176). In addition, Plaintiff reported that she no children, and that before a house fire, she lived alone. (Id. at 30-31, 37, 170-171). According to Plaintiff, she takes care of her personal needs; however, her mother performs her household chores. (Id.). Plaintiff also testified that she

_____

[1] Plaintiff testified that she lost her house and her car in a fire in 2010; however, it appears that even before the fire, Plaintiff was doing very limited driving. (Id. at 34, 43).

goes shopping with her mother and her sisters, that she pays her own bills, that she has never had a checking account, and that she goes to church a couple of times a month. (Id. at 37, 42-43, 171). Additionally, Plaintiff testified that she spends her time watching television and writing to herself. (Id. at 42).

Plaintiff testified that she stopped working in 2009 because she was laid off when the cap manufacturing company shut down. (Id. at 33). According to Plaintiff, the "biggest thing" that keeps her from working now is her leg pain. Plaintiff testified that she injured her left knee in gym class at school in 2007, and had to have arthroscopic surgery as a result. Later, in 2008, Plaintiff was diagnosed with a meniscus tear injury in her right knee. (Id. at 34, 39, 41, 259, 339). Plaintiff also testified that she has low back pain, and described the pain in her left and right knees as a seven or eight on a ten-point pain scale. (Id. at 36, 41). Plaintiff stated that she takes a muscle relaxer and uses pain gel for her knees and back.[2]   (Id. at 35-36, 190).

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.   The Court's review is limited to

---

[2] Plaintiff listed no prescription pain medications in her report to the Agency.  (Tr. 194).

determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

   **B. Discussion**

   An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4]  20 C.F.R.

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that while Plaintiff had engaged in work activity after August 31, 2009, he found that additional evidence was needed on this issue. (Id. at 10). In order to avoid delay, he elected to proceed with the remaining steps of the evaluation process because he determined that the record evidence established that Plaintiff is not disabled. (Id. at 10-11). To that end, the ALJ determined at step two that Plaintiff has the severe impairments of obesity, mechanical back pain, status post left lateral release and medial placation, hypertension, right torn meniscus, dysthymia, and borderline intellectual functioning. (Id. at 11). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.[5] (Id.).

In determining that Plaintiff did not meet any Listing, the ALJ made the following relevant findings:

> **4. The claimant does not have an impairment or combination of impairments that meets or**

---

[5] Plaintiff's only claim on appeal is that the ALJ erred at step three in finding that she did not meet Listing 12.05C. Therefore, the Court will address only that issue. For the ALJ's findings at steps four and five of the evaluation process, see Tr. 14-15, 21-23.

**medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

No treating or examining source or medical expert has so concluded. In addition, I have examined the record, and I find that the evidence does not support such a conclusion. Thus, I find that the claimant's severe impairments, considered singularly or in combination, are not of listing-level severity.

. . .

At first glance, it might be argued that the claimant's impairment meets Listing 12.05. In this regard, the claimant was administered the Wechsler Adult Intelligence Scale – Fourth Edition on March 16, 2011. She obtained the following scores: Verbal Comprehension 70, Perceptual Reasoning 71, Working Memory 71, Processing Speed 76, and Full Scale IQ of 67. Dr. Donald W. Blanton indicated that these scores placed the claimant in the mild range of mental retardation at the time of testing (Exhibit 16F). Section 12.05 C (B or D) refers to retardation, which is defined as significant sub average general intellectual functioning along with deficits in adaptive behavior initially manifested before age 22. Significant sub average intellectual functioning is defined as an IQ of 70 or below. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (3rd Edition). In this case, there is no evidence of such alleged IQ prior to age 22. Indeed the IQ test in question was given to the claimant by a person hired by the claimant's attorney to perform the test after the claimant's 22nd birthday and in fact after the claimant had applied for disability and at a time when the claimant clearly had the motivation to perform poorly or to use less than her best efforts. . . .

In the instant case, the claimant has lived independently until her trailer burned March 16, 2010.

The claimant has worked for a living as a Cap Machine Worker which is semi-skilled in nature. Semi-skilled work is work in which some skills are involved. There is no indication in the record that any employer has ever given the claimant any special consideration due to any alleged retardation or that any employer, physician, or any other person has ever even noticed any alleged retardation on the part of the claimant.

The claimant has a driver's license and drove an automobile up until she had knee surgery. She lost her car during the house fire.

The claimant indicated on the Disability Report that she completed the eleventh grade and did not attend special education classes (Exhibit 2E). The school records reflect that the claimant was enrolled in twelfth grade classes through the fourth nine weeks in 2008. The claimant passed the Mathematics, Language, Science and Social Studies portions of the Alabama High School Graduation Examination (Exhibit 7E). There is no indication in the record that the claimant was in "special education."

. . .

In terms of the claimant's alleged mild mental retardation, the claimant was referred by her attorney, Mr. Coplin for an evaluation. The Wechsler Adult Intelligence Scale-Fourth Edition was administered and the claimant obtained the following scores: Verbal Comprehension 70, Perceptual Reasoning 71, Working Memory 71, Processing Speed 76 and Full Scale IQ score 67. Dr.

Blanton indicated that this score placed the claimant in the mild range of mental retardation at the time of testing. Dr. Blanton indicated that the score was felt to represent a valid assessment of her current level of intellectual functioning as there were no distracting factors during the testing session and she appeared to put good effort into her work (Exhibit 16 F).

The claimant did not allege any disability due to mental impairments at the time the application was filed. This is despite the fact that the Disability Report specifically requests information about all conditions affecting the ability to work. . . . There is no evidence of the use of any medications designed to treat psychiatric or mental symptoms. . . .

The claimant related to Dr. Blanton that she lives with her mother. She does no cooking or cleaning. Her mother does all the housework. She spends most of her day watching Lifetime on the television channel (Exhibit 16F). The claimant has described daily activities that are limited; however, two factors weigh against considering these allegations to be strong evidence, in favor of finding disability. First, the allegations cannot be objectively verified with any reasonable degree of certainty. Second, assuming, arguendo, that the activities of daily living are as limited as alleged, it is difficult to attribute that degree of limitation with the claimant's medical condition as opposed to other reasons in view of the medical evidence of record and other factors discussed in this decision.

The record indicates that the claimant stopped working due to a business related layoff rather than because of the allegedly disabling impairments. The claimant reported "I GOT LAID OFF FROM MY JOB." (Exhibit 2E). Further, there is no evidence

of a significant deterioration in the claimant's medical condition since that layoff. A reasonable inference, therefore, is that the claimant's impairment would not prevent the performance of that job, as it was being performed adequately at the time of the layoff despite a similar medical condition.

I note that the claimant received previous unemployment compensation from the third quarter of 2009 to the third quarter of 2010, a program that requires you to certify under oath that you are <u>able to work</u>. The entire issue for our determination is whether the claimant is in fact able to work or is in fact "disabled." Legally and factually, it has to be one or the other. The claimant cannot be able to work and also be "disabled." A person who is "disabled" is not able to work. The claimant has admitted and conceded in her application to the State of Alabama that she is in fact able to work. . . .

Dr. Blanton, in Exhibit 16F, offered a medical source opinion form (mental) on March 16, 2011, which reads as follows:

> It is my opinion based upon my examination and testing today, that Tanesha V. Myers has marked limitations that seriously interfere with her ability to perform work related activities on a day to day basis in a regular work setting in the following areas:
>
> 1. Understanding detailed or complex instructions.
> 2. Carrying out detailed or complex instructions.
> 3. Remembering details or complex instructions.
> 4. Use judgment in detailed or complex work-related decisions.

5.    Maintain attention and concentration and pace for a period of at least two hours.

It is my opinion that her mental retardation has been a lifelong condition and that her depression and anxiety problems have been present at this level for at least one year. It is also my opinion that her condition is likely to deteriorate if she is placed under stress especially that of a job.

It is my opinion that the patient demonstrates deficits in adaptive functioning manifested prior to age 22 due to her mental retardation in the following areas: communication, self care, work, use of community resources, and functional academic skills.

I give little weight to Doctor Blanton's opinion. It is emphasized that the claimant underwent the examination appearing at Exhibit 16F, that formed the basis of the opinion in question, not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Moreover, Dr. Blanton is not a clinical psychologist. He is a licensed professional counselor. Although such is permitted and not prohibitive, and also deserves equal consideration, the fact that the examination was rendered in preparation for litigation is a relevant factor for consideration (See Dixon v. Apfel, 200 U.S. Dist. LEXIS 18073 (S. Dt. AL) (2000). . . .

The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-23).  The Court now considers the foregoing in light of the record in this case and the issue on appeal.

### 1.  <u>Issue</u>

#### a. Whether the ALJ erred in finding that Plaintiff did not meet Listing 12.05C?

Plaintiff argues that the ALJ erred in finding that she does not meet the requirements of Listing 12.05C.  Plaintiff maintains that she has met the criteria of Listing 12.05C because she has a valid Full Scale I.Q. score of 67 and a physical impairment that imposes additional and significant work-related limitation of function.  (Doc. 14 at 5-8).  The Commissioner counters, however, that the ALJ properly found that Plaintiff's mental impairments do not meet or medically equal Listing 12.05C because Plaintiff has not shown that she has deficits in adaptive functioning, which is required in order to meet the Listing.  (Doc. 18 at 6-7).  Having carefully reviewed the record in this case, the Court finds that the ALJ's decision is not supported by substantial evidence.

As stated above, the Social Security regulations set forth a five-step sequential evaluation process to determine whether a claimant is disabled.  At step three, the claimant has the burden of proving that an impairment meets or equals a listed impairment.  <u>See</u> <u>Harris v. Commissioner of Soc. Sec.</u>, 330 Fed.

13

Appx. 813, 815 (11th Cir. 2009) (unpublished)[6] (citing Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991)). To establish presumptive disability under section 12.05(C), a claimant must present evidence of "[a] valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C). In addition, the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05 (the listing category for mental retardation/intellectual disability),[7] which provides that mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2.

[7] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)). "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people. Id. (citations and internal quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

supports onset of the impairment before age 22." 20 C.F.R. Part
404, Subpart P, Appendix 1, §§ 12.05. In this Circuit,
"[g]enerally, a claimant meets the criteria for presumptive
disability under section 12.05(C) when the claimant presents a
valid I.Q. score of 60 to 70 inclusive, and evidence of an
additional mental or physical impairment that has more than a
'minimal effect' on the claimant's ability to perform basic work
activities." Smith v. Commissioner of Soc. Sec., 535 Fed. Appx.
894, 897 (11th Cir. 2013)(quoting Lowery v. Sullivan, 979 F. 2d
835, 837 (11th Cir. 1992)). Thus, a valid I.Q. score creates a
rebuttable presumption that the claimant manifested deficits in
adaptive functioning prior to the age of twenty-two. See Hodges
v. Barnhart, 276 F. 3d 1265, 1268-69 (11th Cir. 2001).

This presumption can be rebutted when the IQ score is
inconsistent with record evidence of a claimant's daily
activities and behavior. See Popp v. Heckler, 779 F.2d 1497,
1499-1500 (11th Cir. 1986). Accordingly, the ALJ is tasked with
determining whether there is sufficient evidence (relating to
plaintiff's daily life) to rebut the presumption. See Grant v.
Astrue, 255 Fed. Appx 374, 375 (11th Cir. 2007); Hartman v.
Colvin, 2014 U.S. Dist. LEXIS 91467, *7 (S.D. Ala. July 7,
2014). For example, in Hickel v. Commissioner, 539 Fed. Appx.
980 (11th Cir. 2013), the Eleventh Circuit found that the ALJ
did not err where the ALJ acknowledged that the claimant had a

valid IQ score between 60 and 70, applied the presumption established by Hodges, and found that the presumption was rebutted by other evidence that showed that the claimant did not have "deficits in adaptive functioning." Id., 539 Fed. Appx. at 984. In reaching its decision, the court in Hickel noted that the claimant did not dispute that she is a high school graduate; she works part time at a nursery; she drives herself to work; she prepares simple meals and dresses and grooms herself; she attends church regularly; and she socializes with friends. In addition, the Court observed that three medical sources all determined, based on the claimant's better than expected functional capacity, that her mental impairment was more consistent with borderline intellectual functioning than mild mental retardation. Id. at 984-85.

In the case at hand, the undersigned finds, based on a careful review of the record, that the ALJ did not apply the proper legal standard when determining whether Plaintiff met listing 12.05(C). First of all, the record establishes that Dr. Blanton administered the Wechsler Adult Intelligence Scale-Fourth Edition to Plaintiff on March 16, 2011, and she obtained the following scores: Verbal Comprehension 70, Perceptual Reasoning 71, Working Memory 71, Processing Speed 76, and Full Scale IQ score of 67. (Tr. 12). In his decision, the ALJ does not make clear whether or not he deemed the IQ score to be

valid; however, he did state that "[i]n this case, there is no evidence of such alleged IQ prior to age 22." (Id.). As noted *supra*, where a claimant presents a valid IQ score, the claimant is entitled to the presumption recognized in Hodges, and as a result, is not required to demonstrate deficits in more than one area of adaptive functioning before the age of 22. Accordingly, to the extent the ALJ in this case found that Plaintiff's IQ score was valid, he erred because he did not accord her the presumption recognized in Hodges. See Grant v. Astrue, 255 Fed. Appx. 374, 2007 U. S. App. LEXIS 26540 (11th Cir. 2007)(ALJ erred because he did not give plaintiff the benefit of the presumption recognized in Hodges, but instead required her to demonstrate deficits in more than one area of adaptive functioning before the age of 22. Upon remand, the ALJ was directed to determine whether there was sufficient evidence to rebut the presumption that the plaintiff manifested deficits in adaptive functioning before the age of 22).

Assuming, *arguendo*, that the ALJ determined that the IQ score was not valid, he did not proffer valid reasons for invalidating the score. In his opinion, the ALJ noted:

> Indeed the IQ test in question was given to the claimant by a person hired by the claimant's attorney to perform the test after the claimant's 22nd birthday and in fact after the claimant has applied for disability and at a time when the claimant clearly had the motivation to perform poorly or to use less than her best efforts. It

> is interesting to note that the claimant told Dr.
> Blanton before the testing session that she could
> not see out of her right eye very well but she
> could not afford glasses.

(Tr. at 12-13).

The fact that Plaintiff may have been referred to Dr. Blanton by her attorney does not in and of itself provide a basis for rejecting the scores from the IQ test administered by Dr. Blanton. Indeed, in <u>Hickel v. Commissioner</u>, the Eleventh Circuit rejected a similar rationale and noted that there was nothing in the record to reflect how the medical sources were compensated, and that "generating evidence is the purposes of obtaining opinions from medical sources, whether paid for by the Commissioner or by the claimant." <u>Hickel</u>, 539 Fed. Appx. at 987. The court held that the fact that the one time consultative examiner was retained by the claimant rather than the Commissioner was simply not, standing alone, a valid basis for rejecting his opinion. <u>Id</u>. In this case, there is nothing which reflects who paid for Dr. Blanton's services; however, the fact that he was compensated for his services, and that he was recommended by Plaintiff's counsel, does not standing alone, provide a valid basis for rejecting his opinions nor the results of his IQ testing.

Additionally, in rejecting Dr. Blanton's opinions, and presumably the IQ results, the ALJ noted that Dr. Blanton is not

a clinical psychologist, but is a licensed professional counselor who is permitted to administer testing. Again, this is not a valid reason for rejecting Dr. Blanton's opinions or his IQ testing. There is nothing in the record which suggests that Dr. Blanton did not follow proper testing protocol in administering the Wechsler Adult Intelligence Scale-IV test. While Dr. Blanton did note that Plaintiff complained that she could not see very well out of her right eye, he opined that the IQ scores were a valid assessment of her current level of intellectual functioning, as there were no distracting factors during the testing, and she appeared to put good effort into the testing. (Tr. 352). In sum, the ALJ failed to provide valid reasons for rejecting the IQ scores.

The undersigned further finds that the ALJ's errors are not harmless because it is not clear that the record evidence would have rebutted the presumption of deficits in adaptive functioning before age 22. First, while two of the consulting medical sources opined that Plaintiff had borderline intelligence, the evidence is undisputed that they did not have the benefit of Plaintiff's IQ scores, nor is there anything to suggest that they administered any IQ testing to Plaintiff.[8]    In

---

[8] At the request of the Agency, Dr. Nina Tocci, Ph.D. conducted a mental examination of Plaintiff on April 7, 2010. Dr. Tocci found that Plaintiff's affect was appropriate, normal and stable, that she was oriented to time, place, person and

fact, during Dr. Tocci's mental health examination of Plaintiff, she noted that Plaintiff incorrectly calculated change and multiplication problems, was unable to perform serial threes backwards, and demonstrated a poor fund of information and comprehension. (Id. at 269). Additionally, the record reflects that while Plaintiff took regular classes and attended high school through twelfth grade, she did not graduate due to her inability to pass the English portion of the graduation exam after multiple attempts. Notably, the record reflects that Plaintiff successfully passed the non-English portions of the exam after no less than five attempts. (Id. at 200). Further, the evidence reflects that while Plaintiff has a driver's license, she had to take the oral examination three (3) times before obtaining her license, and she is generally driven by others. Additionally, Plaintiff's work history reveals that she

---

situation, and that she demonstrated distracted attention and scattered concentration. Dr. Tocci also observed that while Plaintiff demonstrated appropriate thought content, she demonstrated a poor fund of information and poor social judgment. Dr. Tocci also observed that Plaintiff "appeared to be functioning within the borderline range of intellectual ability" and opined that her prognosis was guarded. She assigned Plaintiff a GAF of 60, and opined that she was motivated to participate in the examination. (Tr. 270)

Dr. Donald Hinton, Ph.D., also completed a Mental RFC Assessment at the request of the Agency on April 13, 2010. (Tr. 286-88). Dr. Hinton reviewed the records and opined that Plaintiff has "*Estimated* Borderline Intelligence" and "Dysthymia" and that she had moderate limitations in her mental abilities. (Id.) (emphasis added).

had one fairly short term semi-skilled job involving the operation of a sewing machine in a cap factory, and a string of fast food positions.  Further, while Plaintiff is able to care for her own personal needs, and at one point lived alone, her daily activities are fairly restricted, and she relies upon her mother to assist with chores, shopping, etc.

In light of the foregoing, the Court finds that the ALJ's determination that Plaintiff does not meet or medically equal Listing 12.05C is not based on substantial record evidence.  As noted *supra*, the ALJ did not proffer valid reasons for rejecting Plaintiff's IQ scores, and to the extent he did not reject the scores, he did not afford Plaintiff the presumption of deficits in adaptive functioning to which she is entitled.  The ALJ likewise failed to determine whether the presumption had been rebutted by the record evidence.  Because the ALJ did not apply the correct standard in this case, this case must be **REVERSED** and **REMANDED**.  See <u>Hartman v. Colvin</u>, 2014 U.S. Dist. LEXIS 91467 (S.D. Ala. July 7, 2014)(remanding case where it was far from clear that had the ALJ applied the correct standard, the evidence would have supported the ALJ's finding that the plaintiff did not meet Listing 12.05 (C)).

### V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the

parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **REVERSED** and **REMANDED**.

      **DONE** this **23rd** day of **September, 2014.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
